IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:21-CR-00070-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) **ORDER**<br>) |
| ALFONSO ROMAN BRITO, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Motion for a Judgement of Acquittal, (Doc. No. 178), which the United States opposes. The Court has carefully considered the Motion and other relevant pleadings of record. For the reasons discussed below the Court will deny the Motion.

## I. BACKGROUND

The Defendant was indicted in a two-count Bill of Indictment on October 19, 2021, charging him with conspiracy to distribute and possess with intent to distribute methamphetamine (Count One) and aiding and abetting the distribution of methamphetamine (Count Twenty-Two). *See* Doc. No. 1. After several continuances, trial commenced on December 12, 2022. At the close of the United States' evidence, the Defendant moved for a Rule 29 judgment of acquittal on both Counts, which this Court denied. After a two-day trial, the jury retired to deliberate.

During deliberations, the jury submitted a question to the Court that read "did the Government attorney share all of the evidence meaning the 20,000 plus pages of Facebook correspondence?" *See* Doc. No. 180. Over the Defendant's objection, the Court answered "yes." *Id*. Ultimately, the jury convicted the Defendant on both counts. *See* Doc. No. 172. The jury verdict

1

also found 50 grams or more of methamphetamine (actual) or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine drug quantity on both counts. *Id*. The Defendant now moves under Rule 29(a) of the Federal Rules of Criminal Procedure for a judgment of acquittal arguing that the evidence presented by the United States at trial was insufficient to sustain a conviction and that the Court improperly answered a jury question submitted to the Court.

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure states that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id*. "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." *Id*.

"A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986)). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d

2

849, 862 (4th Cir. 1996). Moreover, the jury, not the reviewing court, assesses the credibility of the witnesses and resolves any conflicts in the evidence presented. *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Consequently, a court must deny a defendant's Rule 29 motion and accept the jury's verdict if, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

### III. DISCUSSION

a) <u>Insufficiency of the Evidence</u>

The Defendant asserts that the United States offered no direct evidence, and insufficient circumstantial evidence, that would permit any reasonable jury to find guilt beyond a reasonable doubt on: (1) the existence of an agreement between the defendant and one or more other persons; (2) the Defendant's knowledge of any details of the scheme alleged; (3) any intent of the Defendant to join in on the unlawful nature of the plan or scheme; or (4) that the Defendant performed any act with the intent to commit the substantive offense charged. *See* Doc. No. 178. However, taken in the light most favorable to the United States, the Court finds that there was substantial evidence to warrant a jury finding that the Defendant was guilty beyond a reasonable doubt on both counts.

The United States presented evidence detailing how over several years Chad Hildebran obtained methamphetamine from the Defendant. The Defendant used couriers or "rabbits," such as his former brother-in-law, Marcos Martinez, to transport the methamphetamine to Hildebran. The Defendant would provide the pickup locations to Martinez and, on some occasions, require Martinez to take a photo verifying his arrival at the pickup location. The Defendant relayed the photo to an unknown individual, who would show up and hand over gallon sized bags containing methamphetamine to Martinez. The Defendant then provided the location, the date and time for

3

the transportation of the methamphetamine to Martinez. One such location was Hildebran's Airport Rhodhiss Road residence. After the approximate four-hour drive to Burke County, North Carolina, Martinez and Hildebran would complete the transaction. Hildebran received the methamphetamine and Martinez got the money. Hildebran and Martinez would both then inform the Defendant that the deal was completed. Hildebran distributed the methamphetamine to individuals within his community and Martinez would drive back to Georgia and give the money to the Defendant's sister or mother.

The United States produced significant evidence to support this version of events. First, the United States offered the testimony of five witnesses: Marcos Martinez; Special Agent Justin Guess with the North Carolina State Bureau of Investigation; Investigator Brandon Styers with the Catawba County Sheriff's Office; Chad Hildebran; and Task Force Officer Kyle Lawrence with the Drug Enforcement Administration. Martinez testified to his conversations with the Defendant and how the Defendant used him as courier to pick up or deliver money and methamphetamine. Hildebran and Martinez both testified Martinez hand delivered the methamphetamine and Hildebran provided the cash.

Martinez and Hildebran detailed the October 16, 2020, events where Hildebran under the direction of law enforcement ordered 2 kilograms of methamphetamine from the Defendant for $20,000. Investigators recorded the calls between Hildebran and the Defendant and played them for the jury. Martinez stated he recognized the voices on the recordings as belonging to Hildebran and the Defendant. Hildebran also testified the other voice was "Casper," who was the same individual with the Facebook account "Alfonso Brito," and with the cellphone number (678) 353-4490.

In addition to the sworn testimony of the witnesses, the United States introduced numerous exhibits into evidence. The United States introduced the seized methamphetamine and the corresponding laboratory reports for each seizure. The Court admitted Hildebran's cellular phone records that documented his communications with the Defendant where he coordinated the acquisition of methamphetamine. The United States also introduced: (1) certified Facebook records from "Alfonso Brito" and "Casper Casper" and a screen shot of Hildebran's phone documenting the Defendant's contact as "Casper" with phone number (678) 353-4490; (2) screen shots of Hildebran's text messages with the Defendant coordinating a two kilogram methamphetamine transaction; (3) two recordings from October 16, 2020 between Hildebran and the Defendant and the corresponding transcripts that documented their conversations prior to and after Martinez's delivery of the 2 kilograms of methamphetamine; (4) surveillance photos of Martinez after he delivered the 2 kilograms of methamphetamine to Hildebran and during a traffic stop; and (5) photos of the Defendant's tattoo of "Casper" the Friendly Ghost on his left arm.

The Defendant's primary defense was that he was not the "Casper" behind the Facebook and text messages coordinating these drug transactions. The Defendant denied he was the "Casper" involved in the drug transactions though he admitted to having the nickname "Casper." Nevertheless, the United States established the Defendant was "Casper" from his own Facebook posts and records, the direct testimony of Martinez and Hildebran, the text messages with Hildebran, and the tattoo of Casper the Friendly Ghost on his left arm.

In sum, there was direct testimony and a significant amount of documentary evidence that demonstrated the Defendant was indeed "Casper" and that he coordinated these methamphetamine transactions. Accordingly, the Court will deny the Motion.

5

b) <u>Jury Question During Deliberations</u>

The Defendant also argues that the Court erred when it answered a jury question during deliberations. *See* Doc. No. 178. The jury asked whether "the Government attorney share[d] all of the evidence meaning the 20,000 plus pages of Facebook correspondence?" *See* Doc. No. 180. Over the Defendant's objection, the Court answered "yes." The Defendant contends that this answer was not supported by evidence before the jury.

In responding to a jury's question, "the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice." *See United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995). The particular words chosen, like the decision whether to issue any clarification at all, are left to the sound discretion of the district court. *See United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990). Here, the jury asked a question of law about the discovery obligations of the United States.[1] When the Defendant testified, he raised this issue before the jury when he argued the United States should have shown more Facebook records from his accounts. The jury rationally wanted to ensure that all potentially relevant Facebook correspondences were available to the defense. Confident that the United States had met its discovery obligation based on the Assistant United States' Attorney's emphatic declaration and without any representation by the Defendant to the contrary, the Court answered "yes." Importantly, there is no dispute that this exchange of discovery occurred and that the Court's

---

[1] It is well established that the United States has a duty to produce evidence in its possession that is favorable to the accused. *See* Federal Rule of Criminal Procedure 16; *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *Giles v. Maryland*, 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737 (1967); *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

6

answer was factually correct.² As such, the Court's answer did not insert any new facts into evidence but rather clarified the jury's confusion over a question of law. The Court will therefore deny the Defendant's Motion as to this ground.

    **SO ORDERED**

Signed: January 19, 2023

Kenneth D. Bell
United States District Judge

---

² On January 11, 2023, upon the Court's request the parties submitted a joint status report that stated "the United States provided Facebook materials obtained by search during discovery to [defense counsel]" on March 21, and October 4, 2022. *See* Doc. No. 185. The United States also provided additional Facebook materials that were obtained by consent of the account holder. *Id.*